# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANGELICA DAVILA, | ) | |
|---|---|---|
| | ) | Civil Action No. 2:13-cv-00070 |
| Plaintiff, | ) | Judge Mark R. Hornak |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHERN REGIONAL JOINT POLICE BOARD, et al, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

| ANGELICA DAVILA, | ) | |
|---|---|---|
| | ) | Civil Action No. 2:14-00070 |
| Plaintiff, | ) | Judge Mark R. Hornak |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

This dispute is back front-and-center on the Court's docket with the filing of a second lawsuit against the United States and another round of Motions, some new, others travelling old ground. Angelica Davila ("Ms. Davila") originally filed suit against the Northern Regional Joint Police Board ("Police Board"), two Police Board officers, a Federal Immigration and Customs Enforcement ("ICE") officer, and the Allegheny County Jail ("the Jail"), alleging the violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution, actionable via 42 U.S.C. § 1983. She claimed that those parties violated her federal

1

constitutional rights in conjunction with a traffic stop which she somewhat generally asserted was based on her Hispanic heritage and led to her seizure and custody without probable cause.

On October 21, 2013, in a lengthy Opinion[1], the Court dismissed Ms. Davila's claims against Police Board Sergeant John Sicilia and the Jail for failing to plausibly state a cause of action, and against ICE Agent Brianna Tetrault ("Agent Tetrault") under the doctrine of qualified immunity. *See* ECF No. 84; *Davila v. N. Joint Reg'l Police Bd.*, 979 F.Supp.2d 612 (W.D. Pa. 2013). Then, on January 16, 2014, Ms. Davila filed suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, making claims of false arrest, false imprisonment, and negligence, based on ICE agents' alleged role in her detention and imprisonment. 2:14-cv-00070-MRH, ECF No. 1. Due to the cases' shared factual nexus, the Court consolidated them, and Ms. Davila later filed an Amended Complaint ("AC") against the United States. ECF No. 109.

Then came our Court of Appeals' decision in *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014). In *Galarza*, the district court dismissed Section 1983 municipal liability claims against a county jail on the grounds that the jail's alleged custom or practice of enforcing all immigration detainers it received from ICE could not be unconstitutional, because such a policy was "consistent with federal statutes and regulations." *Galarza v. Szalczyk*, 2012 WL 1080020, at *18 (E.D. Pa. Mar. 30, 2012). More specifically, the district court concluded that the language of 8 C.F.R. § 287.7 – which provides that, upon a determination by a federal officer to issue an immigration detainer to a local government agency, such agency "shall maintain custody of the alien for a period not to exceed 48 hours" – required state and local law enforcement agencies to hold persons subject to an ICE detainer in custody. *Id.* at *19.

---

[1] The extensively-pled facts of the case can be found there, and the Court will not repeat them in this Opinion.

The Third Circuit directly refuted that conclusion, holding that the regulatory language the district court focused on was not a mandatory command that deprived a local law enforcement agency of all discretion in determining whether to detain a suspected alien, but merely an indication that if the agency held that individual pursuant to the detainer, any such detention could not exceed 48 hours. *Galarza*, 745 F.3d at 639-42. According to the majority for a divided court of appeals, other, more relevant provisions in the Regulation described immigration detainers as serving to "advise" other agencies and as being in the nature of "requests," and other circuits had uniformly classified such detainers as "requests." *Id.* The court found that construction to be additionally supported by the anti-commandeering principle of the Tenth Amendment, which reserves all powers not explicitly conferred to the federal government for the states.[2] *Id.* at 643-45.

A barrage of motions in this case followed *Galarza* in short order. First, Ms. Davila filed a Motion for Reconsideration of the portion of the Court's Order dismissing her claims against the Jail. ECF No. 111. In its previous Opinion, the Court, citing the *Galarza* district court's opinion, wrote:

> The Court is not aware of, nor is the Plaintiff able to cite to, a case that has held a local government entity's decision to rely on and comply with [8 C.F.R. § 287.7] to be unconstitutional on its face, and no basis has been advanced to conclude that it was unconstitutional for the Jail to abide by the immigration detainer issued by ICE here...
>
> Additionally, nothing in the [Second Amended Complaint] indicates that the Jail knew or should have known that Ms. Davila was being wrongfully detained until ICE instructed the Jail to release her the next morning, and the Jail complied...the Plaintiff cites to no authority that places a duty on local jails to independently investigate the adequacy of the probable cause supporting immigration detainers.

---

[2] More explicitly, the court held that under the Tenth Amendment, federal immigration officials cannot command state and local government agencies or officials to imprison suspected aliens as persons of interest to the federal government. *Galarza*, 745 F.3d at 644.

3

*Davila*, 979 F.Supp.2d at 635. Due to the Third Circuit's clarification of the discretionary nature of immigration detainers in *Galarza*, a basis does now exist for district courts to conclude that a local jail's policy of detaining individuals solely on ICE detainers, including those unsupported by probable cause, could be an unconstitutional practice creating municipal liability under Section 1983. *See Miranda-Olivares v. Clackamas Cty.*, 2014 WL 1414305, at *4-11 (D. Ore. Apr. 11, 2014) (citing the Third Circuit's opinion in *Galarza* and granting summary judgment for the plaintiff on just such a municipal liability claim against a county jail).

If that were not enough to grant Plaintiff's Motion, she also now produces new information, which she credibly demonstrates had previously eluded her reasonable efforts to discern, indicating that the Jail knew or should have known that Ms. Davila was wrongfully detained approximately eight (8) hours before her actual release. That information, contained in documents produced early in the discovery process[3], indicates that the Jail received a fax from ICE at 11:05 p.m. on the night of Ms. Davila's arrest, ordering her release approximately two and a half hours after she was transported to the Jail, and that the Jail had a copy of her lawful permanent resident ("LPR") card and other proof of her legal residence. *See* ECF Nos. 112-1 – 112-5.

A court should grant reconsideration of a prior order if the moving party demonstrates (1) an intervening change in the controlling law; (2) the existence of new evidence that was unavailable when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d

---

[3] According to Ms. Davila, Allegheny County produced this information to counsel for the Defendant Police Board and Defendant Police Board Officer Andrew Bienemann in response to a Rule 45 subpoena in February 2014. ECF No. 112 at 4. Counsel for those Defendants then supplied the information to Ms. Davila's lawyer, who had previously made several requests for the same type of information to Allegheny County under the Pennsylvania Right to Know Law, 65 Pa. Cons. Stat. § 67.101 *et seq.*, and the Freedom of Information Act, 5 U.S.C. § 552 *et seq. Id.* at 4-6.

4

669, 677 (3d Cir. 1999) (internal citation omitted). Ms. Davila has identified a change in the controlling law (*Galarza*) and produced new and previously unavailable evidence which, considered separately or together, plainly alter the calculus of the issue that was then before the Court, as demonstrated by the reasoning of the Court's own prior Opinion. The Court will therefore grant the Plaintiff's Motion for Reconsideration and vacate its Order dismissing the claims against the Jail. She will be allowed to amend her Complaint to reassert claims against the Jail.

Defendant Police Board Officer Andrew Bienemann ("Officer Bienemann") also filed a Motion for Reconsideration, contending that *Galarza* constituted a change in the controlling law as to the claims against him, and that the Court made a clear error of law in failing to dismiss Ms. Davila's claims against him on qualified immunity grounds. ECF No. 121.

A government official sued under Section 1983 is entitled to qualified immunity unless the plaintiff shows that the official violated a statutory or constitutional right that was "clearly established" at the time of his alleged conduct. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). A right is "clearly established" when the statutory or constitutional question confronting the official is "beyond debate" – that is, when every reasonable official in the defendant's shoes would have understood that he was violating that right. *Id.* at 2083. *See also Lane v. Franks*, 2014 WL 2765285, at *10 (2014). Officer Bienemann claims *Galarza* demonstrates that there was no clearly established precedent indicating that he could or should have refused to arrest Ms. Davila on the ICE detainer, and that he is therefore entitled to qualified immunity.

While Officer Bienemann is correct as to the lack of clarity in the law on immigration detainers, Ms. Davila does not ground her claims against him on any alleged violation of a clearly established right related to such detainers. Instead, she claims that Officer Bienemann

5

violated her right to equal protection, which prohibits selective enforcement of the law, and her right to be free from arrest without probable cause. It is well settled and beyond debate that both of those rights were clearly established at the time of the events at issue. *See Whren v. United States*, 517 U.S. 806, 813; *Wong Sun v. United States*, 371 U.S. 471, 479-80 (1963).

Officer Bienemann points to the language of *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014) – which instructs that courts should not define "clearly established" law generally and must instead scrutinize whether the official acted reasonably in the particular circumstances he faced – arguing that had this Court so scrutinized the circumstances he dealt with during the traffic stop in question, event by event, it should have granted him the benefit of qualified immunity. The Court disagrees. Ms. Davila alleges that, right off the bat, Officer Bienemann committed a constitutional violation by pulling her over because of her Hispanic ethnicity. In its prior opinion, the Court concluded that a plausible, reasonable inference could be drawn from the facts pled that Officer Bienemann "acted with a discriminatory purpose in investigating Ms. Davila's immigration status at least in part because of her ethnicity." *Davila*, 979 F.Supp.2d at 630. Officer Bienemann has presented nothing that would change the Court's conclusion as to that alleged violation of Ms. Davila's clearly established equal protection right to be free from selective enforcement of the law.

Even if the Court were to put aside the allegation that the entire premise for Officer Bienemann's initial stop of Ms. Davila was an equal protection violation, the Court cannot conclude at this juncture that the rest of Officer Bienemann's conduct was necessarily not violative of clearly established constitutional rights. An investigative stop must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983). Although an officer may further investigate beyond the original purpose

of the stop by developing reasonable suspicion of criminal activity, *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003), the stop becomes a *de facto* arrest if it can no longer be justified as reasonable. *United States v. Sharpe*, 470 U.S. 675, 685 (1985). As Officer Bienemann suggests, this is a fact-intensive, case-specific inquiry. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). But at this stage of the case, that reality cuts against his argument for dismissal.

As laid out in the Second Amended Complaint ("SAC"), Ms. Davila's traffic stop presented a unique set of circumstances. However, viewed in the light most favorable to the Plaintiff, that stop was a two-hour detention for a minor traffic infraction, caused solely by Officer Bienemann[4], allegedly based on Ms. Davila's ethnicity, that at some point became an arrest lacking in probable cause. If proven, that would be a violation of clearly established constitutional rights. It may turn out that Officer Bienemann was acting reasonably in detaining Ms. Davila for over two hours, and that he possessed probable cause to support her arrest, but there is still much uncertainty in the fledgling record as to what exactly occurred, and why, leading up to and during that roadside detention. As a result, it is not plain to the Court if or when the detention became an arrest, or how Officer Bienemann established reasonable suspicion of criminal activity to investigate Ms. Davila's immigration status or probable cause to arrest her. *See Carrasca v. Pomeroy*, 313 F.3d 828, 837 (3d Cir. 2002). The Court will therefore deny Officer Bienemann's Motion without prejudice to its later reassertion upon a more fully developed record at summary judgment.

---

[4] The Court finds unconvincing Officer Bienemann's argument that the portion of the time of the stop comprised of his waiting for ICE to get back to him should not count against him. Officer Bienemann made the stop himself, posed questions to Ms. Davila's passenger about his immigration status, and then affirmatively contacted ICE about both of the occupants of the vehicle. It is plain that he set the wheels in motion as to all that occurred during those two-plus hours. For purposes of analyzing this issue, he owns them.

7

Finally, the United States has filed a Motion to Dismiss Ms. Davila's false arrest and false imprisonment claims against it under the FTCA.[5] ECF No. 115. The FTCA waives sovereign immunity for torts committed by federal government employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). The scope of FTCA liability is determined by the law of the state where the tort occurred. *Lomando v. United States*, 667 F.3d 363, 372-73 (3d Cir. 2011) (internal citations omitted). Under Pennsylvania law, the elements of false arrest and false imprisonment are the same: (1) detention of another person (2) that is unlawful. *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010).

As an initial matter, the United States cannot be liable for the conduct of Officer Bienemann prior to Agent Tetrault's request that he detain Ms. Davila. As the employee of a local police department, he does not fall within the statute's definition of a federal government employee, 28 U.S.C. § 2671, and he was not an agent of the federal government such that his roadside performance necessarily in all respects was subject to federal government supervision. *See Logue v. United States*, 412 U.S. 521, 530-31 (1973). Further, Agent Tetrault's questioning of Ms. Davila by phone did not constitute a seizure for Fourth Amendment purposes. *See Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 199-200 (7th Cir. 1985); *United States v. Royer*, 460 U.S. 491, 497-98 (1983).

The period of time following Agent Tetrault's request to Officer Bienemann to detain Ms. Davila is another matter. The United States cites to a gaggle of cases for the proposition that ICE's issuance of an immigration detainer for Ms. Davila did not place her in federal custody, and therefore the United States cannot be liable for her detention.[6] However, the plaintiffs in

---

[5] In her response to that Motion, Ms. Davila withdrew her FTCA negligence claim. ECF No. 129 at 5.

[6] *See Garcia v. INS*, 733 F.Supp. 1554, 1555 (M.D. Pa. 1990); *Nasious v. Two Unknown B.I.C.E. Agents*, 657 F.Supp.2d 1218, 1229-30 (D. Col. 2009), *aff'd* 336 F. App'x. 894 (10th Cir. Feb. 19, 2010); *Zolicoffer v. U.S. Dep't*

those cases were prison inmates incarcerated on other criminal charges. Ms. Davila was taken into physical custody, after a couple of hours in a suburban parking lot, solely on the authority of the immigration detainer. She was never charged with any state crime or even a traffic infraction. While *Galarza* has made it plain that detainers are "requests" that local law enforcement are not required to comply with, the detainer Agent Tetrault issued was the only reason Ms. Davila formally was arrested or confined (outside of her car) at all. The United States is "answerable under the FTCA 'in the same manner and to the same extent as a private individual under like circumstances'" for the tortious actions of its employees. *Lomando v. United States*, 667 F.3d 363, 373 (3d Cir. 2011) (citing 28 U.S.C. § 2674 and *United States v. Olson*, 546 U.S. 43, 46 (2005)). As alleged, an employee of the federal government, acting within the scope of that employment, directly caused Ms. Davila's arrest and confinement. This provides a plausible basis for liability on the part of the United States.

The United States further argues that the claims against it should be dismissed because Agent Tetrault had probable cause to detain Ms. Davila under the authority of 8 U.S.C. § 1304(e), which makes failure to carry "any certificate of alien registration or alien registration receipt card" an independent federal misdemeanor. According to the AC, while speaking with Ms. Davila, Agent Tetrault asked her if she had a visa, and she told Agent Tetrault that she was an LPR. AC at ¶ 57. Ms. Davila then told Agent Tetrault that she had lived in the United States for years but did not have her LPR card on her person. *Id.* at ¶ 64. Numerous courts have held that such information establishes probable cause to arrest an individual under 8 U.S.C. § 1304(e). *See United States v. Castro-Tirado*, 407 F.Supp. 210, 211 (E.D.N.Y. 1976); *United States v. Hernandez-Rojas*, 470 F.Supp. 1212, 1220-21 (E.D.N.Y. 1979); *Martinez v. Nygaard*, 831 F.2d

---

*of Justice*, 315 F.3d 538, 541 (5th Cir. 2003); *Campos v. INS*, 62 F.3d 311, 314 (9th Cir. 1995); *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir. 1990); *Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir. 1989); *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir. 1988).

9

822, 828 (9th Cir. 1987); *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218-19 (9th Cir. 1995); *United States v. Moya-Matute*, 735 F.Supp.2d 1306, 1344-46 (D.N.M. 2008); *Barrera v. U.S. Dep't of Homeland Sec.*, 2009 WL 825787, at *6 (D. Minn. Mar. 27, 2009); *United States v. Hernandez-Sanchez*, 2011 WL 3420598, at *6 (E.D.N.C. Aug. 4, 2011); *United States v. Vasquez-Ortiz*, 344 F. App'x 551, 554-55 (11th Cir. Sept. 16, 2009); *Polanco v. United States*, 2014 WL 795659, at *5 (E.D.N.Y. Feb. 27, 2014). Importantly, under Pennsylvania law, an arrest based on probable cause is justified and therefore cannot create liability for false arrest or false imprisonment. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).

The Court does note that there is not one iota of evidence in the AC or in the somewhat developed record filed with the pending Motions that Ms. Davila was ever charged with a violation of 8 U.S.C. § 1304(e), or that Agent Tetrault or any other law enforcement officer, state or federal, contemplated arresting her on such a violation. It is apparent from the information in the record and the papers filed by both parties that Ms. Davila was detained under 8 U.S.C. § 1357(a)(2), which grants federal immigration officers the power to make a warrantless *civil* arrest of an alien if they have probable cause that an individual is in the United States in violation of immigration law and is likely to escape before a warrant can be obtained for her arrest. *Babula v. INS*, 665 F.2d 293, 298 (3d Cir. 1981).

However, that detail does not direct this Court's inquiry when determining the reach of probable cause for an arrest, even for an offense that was not in the subjective contemplation of the law enforcement officer. In considering that question in the Fourth Amendment context, the Supreme Court has stated:

> [A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996); *Arkansas v. Sullivan*, 532 U.S. 769 (2001). That is to say, his subjective reason for making the arrest need not be the criminal offense as

10

> to which the known facts provide probable cause. As we have repeatedly explained, "'the face that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Whren, supra*, at 813 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren, supra*, at 814.

*Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). The offense establishing probable cause need not even be "closely related" to and based on the same conduct as the offense identified at the time of arrest:

> Such a rule makes the lawfulness of an arrest turn upon the motivation of the arresting officer – eliminating, as validating probable cause, facts that played no part in the officer's expressed subjective reason for making the arrest, and offenses that are not "closely related" to that subjective reason (internal citations omitted). This means that the constitutionality of an arrest under a given set of known facts will "vary from place to place and from time to time," *Whren, supra*, at 815, depending on whether he correctly identifies a general class of offense for which probable cause exists. An arrest made by a knowledgeable, veteran officer would be valid, whereas an arrest made by a rookie *in precisely the same circumstances* would not. We see no reason to ascribe to the Fourth Amendment such arbitrarily variable protection.

*Id.* at 153-54.

Because Ms. Davila alleges facts in the AC establishing that Agent Tetrault had probable cause to arrest her for a violation of 8 U.S.C. § 1304(e), the United States cannot be liable under the FTCA for false arrest or false imprisonment flowing from that arrest.

Any basis for liability on the part of the United States for Ms. Davila's subsequent imprisonment at the Jail is precluded by the fact that, at 11:05 p.m. on the night of her arrest, Agent Tetrault transmitted a fax to the Jail ordering (or requesting) that she be released from custody. Within two and a half hours after an ICE agent issued a request for Ms. Davila's detention, ICE personnel had followed the procedure for an independent review of a warrantless arrest established by federal Regulation, *see* 8 C.F.R. § 287.3(a)-(d), recognized that the detainer

11

was issued in error, and apparently faxed a release order to the Jail.[7] Any further delay in Ms. Davila's release, which was still about eight (8) hours away, was plainly not caused by any agent of the United States. The Court will therefore grant the United States' Motion in its entirety and dismiss Ms. Davila's case against the United States.

To sum up the Court's rulings, the Plaintiff's Motion for Reconsideration is granted, the Court's dismissal of the Jail from the case is vacated, and Ms. Davila may file an amended Complaint within twenty-one (21) days of the date of this Opinion, reasserting her claims against the Jail. Officer Bienemann's Motion for Reconsideration is denied, and all claims asserted against him remain live. The United States' Motion to Dismiss is granted, and the Plaintiff's case against the United States is dismissed.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: July 28, 2014
cc: All counsel of record

---

[7] At oral argument on these Motions, the parties were not yet prepared to go all in and stipulate to the authenticity of that fax. They were in agreement that it was produced by Allegheny County in response to a Rule 45 subpoena directed to it.

12