# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELICA DAVILA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:13-cv-070 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| NORTHERN REGIONAL JOINT POLICE BOARD, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION**

**Mark R. Hornak, United States District Judge**

This case is before the Court again on a Motion to Dismiss the Third Amended Complaint by Defendant Officer Bienemann in Dkt. No. 13-070. The Motion to Dismiss at 13-070 will be granted in part and denied in part.

The facts underlying the matters in this case have been laid out in detail in two prior Opinions of the Court, ECF No. 84, *Davila v. N. Reg'l Joint Police Bd.*, 979 F. Supp. 2d 612 (W.D. Pa. 2013) *opinion vacated in part on reconsideration*, No. 13-70, 2014 WL 3735631 (W.D. Pa. July 28, 2014) (*Davila I*); ECF No. 136, *Davila v. N. Reg'l Joint Police Bd.*, No. 13-00070, 2014 WL 3735631 (W.D. Pa. July 28, 2014) (*Davila II*), and will not be repeated here. This case focuses on the detention of the Plaintiff in a road side parking lot and then at the Allegheny County Jail on January 22, 2011. The only Defendant involved in these Motions is Officer Bienemann.

I.  **Officer Bienemann's Motion to Dismiss the Third Amended Complaint and Application of the Qualified Immunity Doctrine**

Officer Bienemann moves to dismiss all five (5) claims asserted against him in the Third Amended Complaint ("TAC") on the basis that they do not plausibly state claims for relief, or that their assertion is barred by qualified immunity. To sustain a motion to dismiss, the Court has to conclude as a matter of law that the claims as stated, or as may be reasonably supported by discovery, do not state plausible claims for relief under the applicable substantive legal rules. *Thompson v. Real Estate Mortg. Network,* 748 F.3d 142, 147 (3d Cir. 2014). As to the assertion of qualified immunity, the Court is to dismiss Section 1983 damage claims against a local government official unless it can be said that his conduct as alleged violated a settled constitutional right. *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 858 (3d Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). As the Supreme Court has stated, the doctrine of qualified immunity is intended to give such governmental actors a wide berth, and it protects from damage suits "all but the plainly incompetent or those who knowingly violate" a constitutional right of a plaintiff. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011) (internal quotation marks and citations omitted). This Court has previously applied precedent from our Court of Appeals to conclude that the qualified immunity "inquiry focuses not on a 'fact-by-fact' match up, but instead on whether the alleged facts fairly fall within the contours of a substantive doctrine of law that itself is clearly established at the time of the alleged conduct. *Doe v. Cnty. of Fayette*, No. 14-0196, 2014 WL 5493814, at *6 (W.D. Pa. Oct. 30, 2014) (citing *Lagano*, 769 F.3d at 859). That said, both the Supreme Court and our Court of Appeals have cautioned against defining the right at issue broadly, rather than specifically in the context of a given case. *City & Cnty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1776 (2015) (quoting *al-Kidd*, 131 S. Ct. at 2084); *Estep v. Mackey*, No. 15-1943, 2016 WL 574029, *3 (3d Cir. Feb. 12, 2016); *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015).

In short, a right is clearly established if every reasonable similarly-situated official would understand that his conduct violates that right. *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). A case directly on point is not required, but then-existing precedent must have placed the question beyond debate. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

A.  **Count I**

Taking them in order as to Officer Bienemann, Count I alleges that he violated the Plaintiff's Fourth Amendment right against a seizure made without probable cause when he "seized" her at the roadside.[1] He contends that based on the facts alleged in the TAC, there was not and could not be an impermissible seizure, but only an appropriately reasonable roadside investigative stop.

Here is the situation as the Court sees it: if Ms. Davila's traffic stop morphed into an arrest, then that arrest allegedly occurred without probable cause; similarly, if Officer Bienemann prolonged the traffic stop without reasonable suspicion of wrongdoing, that stop was unreasonable. On the other hand, if the facts in the TAC do not plausibly plead that Ms. Davila was "arrested," or that Officer Bienemann had reasonable suspicion to believe Ms. Davila was committing a crime when he detained her beyond the time required for the initial stop, then there was no constitutional violation, meaning the TAC does not state a claim (and the first prong of the qualified immunity analysis is not fulfilled).

If the former is adequately pled, however, the act of arresting someone without probable cause violates the clearly established right that there must be, at the moment of arrest, "facts and circumstances within [law enforcement's] knowledge and of which they had reasonably

---

[1] To be clear, Ms. Davila does not allege that Officer Bienemann's traffic stop was unlawful, as he appears to contend she does in his brief, ECF No. 159, at 10, but rather that the stop became unlawful because it was prolonged beyond a reasonable amount of time. So while it is true that the Court previously concluded Officer Bienemann had the requisite reasonable suspicion required for a traffic stop, *Davila I*, 979 F. Supp. 2d at 628, that conclusion has no bearing on whether the stop then became unreasonable, or an arrest.

trustworthy information [] sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The contours of this right can be further narrowed, in that it is clearly established that an occupant of a car cannot be arrested and searched, even if another occupant of the car admits to a violation of the law, unless there is something more to establish probable cause as to each individual occupant. *United States v. Di Re*, 332 U.S. 581, 592–94 (1948);[2] *see also Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be."); *Sibron v. New York*, 392 U.S. 40, 62–63 (1968) (explaining that no probable cause to arrest and search existed although an officer had seen the defendant "talking to a number of known narcotics addicts over a period of eight hours" when he knew nothing of the conversation's content, nor did he see anything pass between them). Again, these clearly established rights would only have been violated in Ms. Davila's case if the traffic stop became an arrest.

It is also clearly established that short of arrest, people are "seized" when pulled over for traffic stops, *Illinois v. Caballes*, 543 U.S. 405, 407 (2005), and that "the reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). It is clearly established that once a stop has occurred, "the stop and inquiry

---

[2] *Di Re* was perhaps narrowed by the Supreme Court in *Maryland v. Pringle*, 540 U.S. 366, 373–74 (2003). However, the facts of *Pringle* are much less analogous to the present facts than those in *Di Re*. In *Pringle*, the defendant was one of three occupants of a car in which drugs were found in a glove compartment, and none of the car's occupants admitted that the drugs were his. *Id.* at 368–69. That being the case, the Court concluded that any or all of the defendants could have "possessed" the drugs. *Id.* at 372–73. Unlike in *Pringle*, both in *Di Re* and here, there was no information pointing to Di Re or Ms. Davila's wrongdoing, even when others in the car with Di Re were violating the law and even when Ms. Davila's passenger admitted to being in the country unlawfully. *Di Re*, 332 U.S. at 592.

4

must be reasonably related in scope to the justification for their initiation." *Id.* at 881 (internal quotation marks and citation omitted). A lawful roadside seizure "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Caballes,* 543 U.S. at 407; *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

The facts in the TAC plausibly plead that the traffic stop, initially justified based on the fact that Ms. Davila did not turn on her car's headlights, became unlawful when it was "prolonged beyond the time reasonably required to complete that mission." *Caballes,* 543 U.S. at 407. As pled in the TAC, there are no facts which would have given Officer Bienemann either probable cause, or reasonable suspicion, to believe that *Ms. Davila* was violating immigration (or any other) laws such that he could lawfully continue detaining her while he investigated her immigration status. *See United States v. De La Cruz*, 703 F.3d 1193, 1198 (10th Cir. 2013) ("When the agents apprehended [a vehicle's passenger], they discovered he was illegally in the United States. That is a status crime, which would not necessarily suggest that the driver of the vehicle from which he fled was also involved in criminal activity."). While either standard may have been satisfied as to her passenger, whose direct response to Defendant Beinemann's question was that he was not legally present in the United States, [ECF No. 138, at ¶¶ 42](#)–43, wrongdoing by one person does not automatically impute wrongdoing to another—that law is clearly established.

The facts alleged support a reasonable inference that Ms. Davila was under *de facto* arrest based on less than probable cause or any reasonable suspicion to believe she violated any law (other than that requiring the use of headlights) include that (1) Ms. Davila provided Officer

Bienemann with her license, proof of registration, and insurance when asked, *id.* ¶ 32–33; (2) Officer Bienemann instructed Ms. Davila to move her car to a specific location and told her he was waiting for a return phone call from ICE, *id.* ¶¶ 51–52; (3) Ms. Davila did not believe she was free to leave at any time after Officer Bienemann pulled her over, *id.* ¶ 61; (4) "[Ms.] Davila asked the officers several times if she could use the restroom but her requests were refused," *id.* ¶ 62; and (5) it was at least longer than twenty (20) minutes after Officer Bienemann initially pulled Ms. Davila over that he actually spoke with an ICE agent to ask that ICE investigate Ms. Davila, and (6) the entire traffic stop took approximately two (2) hours (although that includes the seemingly short time after Agent Tetrault informed Officer Bienemann that Ms. Davila was out of status), *id.* ¶¶ 50, 67.[3]

While it may indeed turn out, with the benefit of discovery, that Officer Bienemann had probable cause or at least a reasonable basis to suspect Ms. Davila had violated some law other than that requiring her headlights to be on, the Court concludes that at this juncture, it is just too

---

[3] The parties at oral argument hotly contested how long it was before Officer Bienemann received any sort of notice from the federal immigration officials that the Plaintiff was (according to their records) "out of status," which led to his placing her in formal custody (handcuffs, patrol car ride to the police station, trip to the County Jail). In support of his argument, Officer Bienemann points to a slew of time records purportedly from the local police dispatch center and from the immigration "Law Enforcement Support Center" that he says show that at most, this time period was from 6:07 p.m. to 6:34 p.m. on the night in question. The TAC and other documents allege and then show that this time could have been as long as from 5:45 p.m. to 7:22 p.m. This means that it could have been anywhere from twenty-seven (27) to ninety-seven (97) minutes. The problem here is that we are at the Motion to Dismiss stage. All pleading inferences cut in favor of the Plaintiff. The records advanced by Officer Bienemann have not been authenticated. They are not as a whole so necessarily intrinsic to the Plaintiff's case that this Court in the sense of completeness must nonetheless consider them in the context of a motion to dismiss, even though the Plaintiff does not rely upon them. The Court has not given any notice as required by Fed. R. Civ. P. 56 that it was converting the Motion to Dismiss to one for summary judgment. Further, the Plaintiff has not stipulated as to their authenticity, completeness or meaning, nor is any of that so facially apparent that the Court must conclude that they have but one meaning. In the Court's estimation, the TAC does sufficiently assert facts which if proven would plausibly demonstrate that what started as a detention at the roadside from non-use of headlights had progressed to an arrest without probable cause or a seizure without reasonable suspicion before Officer Bienemann would have had sufficient objective facts demonstrating a lawful basis to seize the Plaintiff. The documents to which Officer Bienemann makes reference are not sufficiently part of the record such that even if the Court could consider them, they demonstrate as a matter of law that the period of time that Plaintiff was detained before he received word from immigration officials was so short that even if probable cause was lacking for that period of time, there could be no arrest. *See United States v. Place*, 462 U.S. 696, 709–10 (1983) ("[A]lthough we decline to adopt any outside time limitation for a permissible *Terry* stop, we have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case."). In short, there are material, unresolved actual disputes as to the duration of the stop which is one of the matters central to the qualified immunity issue here.

soon to tell as a factual matter. *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d at 637 n.4 ("[W]hile issues of fact may preclude a definitive finding on the question of whether the plaintiff's rights have been violated, the court must nonetheless decide whether the right at issue was clearly established"); *see also Carrasca v. Pomeroy*, 313 F.3d 828, 836 (3d Cir. 2002) (framing the question of whether facts establish a "reasonable basis for an investigatory detention" as one for a fact finder); *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (citing *United States v. Arvizu,* 534 U.S. 266, 273 (2002); *United States v. Orsolini,* 300 F.3d 724, 728 (6th Cir. 2002)) ("In determining whether there was a basis for reasonable suspicion, a court must consider the totality of the circumstances, in light of the officer's experience.").[4] When the TAC otherwise adequately pleads fact which, if true, show a violation of clearly established constitutional rights,[5] the TAC states a claim and qualified immunity must be denied, at least at this stage.[6]

## B. Count II

Count II alleges that Bienemann "caused" the involved immigration detainer to issue, and that the resulting seizure was a Fourth Amendment violation for which he is liable to the Plaintiff. The Court's reading of the TAC, drawing all inferences in favor of the Plaintiff, demonstrates that

---

[4] As our Court of Appeals noted in *Givan*, the Court must consider Officer Bienemann's decision here "in light of [his] experience." 320 F.3d at 458. That experience is not part of the record at this stage.

[5] As noted above, it is not the law that until the Supreme Court itself assesses the exact factual situation presented in every case, every government official must be entitled to qualified immunity. The inquiry is not whether the facts themselves have been presented before, but whether a sufficiently narrowly defined right is clearly established. As the Court has explained, despite the fact that the Supreme Court has not dealt specifically with a case where a local law enforcement officer took it upon himself to investigate the immigration status of a person based solely on the facts that (1) she appears to be of Hispanic origin, and (2) a person with her has admitted to being in the country unlawfully, the Court concludes that if the facts pled in the TAC are true, as the Court must assume at this stage, and if discovery does not reveal any further justification on Officer Bienemann's part, he could be found to have violated clearly established law by detaining, and perhaps arresting, Ms. Davila solely on the basis of the two facts set forth above.

[6] The Supreme Court's opinion in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), does not change the analysis in terms of what legal rule was clearly established as of the date of the incident in 2011. While that case sheds more light on the law surrounding traffic stops, *see Rodriguez*, 135 S. Ct. at 1616 (holding that dog sniff that prolongs a traffic stop beyond that reasonably required to accomplish the stop's mission, if that sniff was not supported by independent reasonable suspicion, violates the Fourth Amendment); it did not announce a new rule that changed the clearly established nature of the rights articulated above, *see Rodriguez*, 135 S. Ct. at 1612 ("[W]e adhere to the line drawn in [*Caballes*].).

this Count fails to state a claim. There are no allegations which would lead to a plausible conclusion that Officer Bienemann did anything to steer the federal authorities to issue the detainer, other than telling them the facts as alleged in the TAC. The decision to issue, or to not issue, the detainer was theirs, and not his, and there is nothing in the TAC that in any way alleges that he somehow misled those federal authorities, or duped them into doing something that their judgment and discretion would not have otherwise allowed. Officer Bienemann did not issue the detainer, and the TAC does not plead facts from which it could be plausibly concluded that he "caused" a constitutional violation of the Plaintiff's rights by his transmittal of the facts on the scene to the immigration officials.

Furthermore, the argument that he could not lawfully assist in enforcing immigration laws by arresting a suspected illegal alien goes to a "right" that was not clearly established at the time of the incident. *See Arizona v. United States*, 132 S. Ct. 2492, 2505 (2012) (explaining, months after the events at issue here occurred, that local law enforcement officers arresting aliens based on an Arizona statute would be improper because "[i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent"); *see also id.* at 2506 ("Federal law specifies limited circumstances in which state officers may perform the functions of an immigration officer."). The Motion to Dismiss as to Count II will therefore be granted.

C. **Count III**

Count III alleges that Officer Bienemann, along with the local officials that run the local police force, used the Plaintiff's Hispanic heritage as reason to detain her, and that they engaged in a level of selective enforcement that snared her based on that ethnicity. The Court has extensively considered this issue in its prior Opinions, *Davila I*, 979 F. Supp. 2d at 629–31, 632–33; *Davila II*, 2014 WL 3735631, at *3–*4, and in examining the TAC, the Court concludes that it adequately pleads an Equal Protection violation by Officer Bienemann, one which contravened

long established constitutional rights. Those portions of the TAC are sufficiently specific to pass over the motion to dismiss threshold, and now may be tested in discovery and perhaps at summary judgment.

For reasons already noted by the Court in *Davila I* and *Davila II*, it has long been settled law that the discriminatory enforcement of the law based on the ethnicity of the actor states a constitutional violation. The right at issue can also be defined more narrowly: just as the Supreme Court held years ago that it was unlawful to stop a vehicle near the border when "the only ground for suspicion is that the occupants appear to be of Mexican ancestry," *Brignoni-Ponce*, 422 U.S. at 876, the Supreme Court has also held that officers may not prolong roadside stops absent reasonable suspicion, *Caballes,* 543 U.S. at 407. Taken together, these cases demonstrate that it was clearly established at the time of the alleged incident that it violates the Fourth Amendment for officers to instigate or prolong a traffic stop based on a person's ethnicity absent other facts providing reasonable suspicion.

As the Court has already stated, the facts in the TAC reasonably and plausibly support the conclusion that Officer Bienemann did not have probable cause or reasonable suspicion to believe *Ms. Davila* was breaking any law other than that requiring her headlights to be on at night. As such, given what is at this point a necessarily fact-intensive, case specific inquiry, *Davila II*, 2014 WL 3735631, at *4, the qualified immunity analysis must be deferred to the summary judgment stage. *See also Carrasca*, 313 F.3d at 828 ("We cannot summarily dismiss Plaintiffs' contention that Pomeroy's initial request for immigration documentation and subsequent detention was based solely on Plaintiffs' appearance as Mexicans, lending support to their contention that Pomeroy had a racially discriminatory purpose when apprehending Plaintiffs and further bolstering their racial profiling claim."). Since the allegedly violated rights were clearly established, and Officer Bienemann's conduct allegedly contravenes them by the plain terms of the TAC, the Motion to

9

Dismiss Count III based on qualified immunity is denied without prejudice to its reassertion at a later stage.

D. **Count IV**

Count IV alleges that Officer Bienemann violated the Plaintiff's Fourth Amendment rights by taking her to the Allegheny County Jail and permitting her custody there in reliance on the federal immigration detainer at the heart of this case. Because the Court cannot conclude that at the time of the events that underlie the TAC his doing so was based on an unreasonable understanding that he was obligated to obey such a detainer, or in the alternative, that it was unreasonable for him to conclude that the detainer was lawfully issued and that he could properly follow its direction, qualified immunity would apply to this claim, and it is dismissed as to Officer Bienemann.[7] *Cf. Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014) (holding in a precedential opinion, years after the events asserted in Plaintiff's TAC, that such detainers do not impose mandatory obligations on local officials to detain suspected aliens).

E. **Count V**

Finally, Count V alleges that shortly after Officer Bienemann delivered the Plaintiff to the Allegheny County Jail, he received word from federal immigration officials that they had determined that their detainer as to Plaintiff was issued in error, and that Plaintiff should not be held. He contends that at worst, the federal officials were equivocal as to some or all of that, and that in addition, the federal authorities plainly stated that they would so communicate this update to the jail. However, a plausible and fair reading of the TAC is that Officer Bienemann knew enough to call into question Plaintiff's continued custody, and that he was the law enforcement official that had actually delivered her up into that custody. Because it is settled law that a "prosecutor" that comes into the knowledge that custody is no longer valid has a duty to address

---

[7] The Court notes that the Plaintiff appears to have abandoned any arguments as to this claim in this round of briefing.

10

that information to those holding the involved person, Count V both states a claim for relief, and does not present facts that cloak Bienemann with qualified immunity. This matter was addressed in detail in this Court's prior Opinion, *see Davila I*, 979 F. Supp. 2d at 631–32 (collecting cases from the First, Third, Fifth, Seventh, and Eleventh Circuits for the proposition that an "officer's [or prosecutor's] failure to release an individual after the officer knew or should have known that the person was wrongfully detained gives rise to a cause of action under § 1983."); *see also Spady*, 800 F.3d at 639 (addressing whether a consensus among Courts of Appeal may suffice to clearly establish a federal right).

In summary, the Motion to Dismiss of Officer Bienemann is granted for the reasons stated as to Counts II and IV of the TAC, and is denied in all other respects.

        s/ Mark R. Hornak
        Mark R. Hornak
        United States District Judge

Dated: March 31, 2016

cc: All counsel of record